UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE PARKER,

     Plaintiff,                       Case No. 2:20-cv-10961

                                       District Judge Stephen J. Murphy, III

v.                              Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDTION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.      Introduction

This is a social security case.  Plaintiff Katherine Parker brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 13, 14) which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

1

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Parker is not disabled under the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 14) be GRANTED, Parker's Motion for Summary Judgment (ECF No. 13) be DENIED, and that under sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.    Background

### A.    Procedural History

Parker was 50 years old at the time of her alleged date of onset of April 28, 2012.  (ECF No. 7-5, PageID.190).  She has a high school education and prior work experience as an assistant manager for a retail store, a design fabricator, a receptionist, and a sales associate.  (ECF No. 7-6, PageID.220-221).  She alleged disability due to symptomatic Tarlov cyst disease; restless leg syndrome; pain in her back, left leg, feet, and rectum; difficulty emptying her bladder; right leg swelling; and pain while standing, sitting, and lying down.  (*Id*., PageID.219).

After Parker's DIB application was denied at the initial level on August 17, 2017, she requested an administrative hearing, which was held on January 9, 2019 before the ALJ.  (ECF No. 7-2, PageID.43).  Parker testified at the hearing, as did a vocational expert (VE).  (*Id*.).  Parker's testimony will be summarized below.  On

2

February 27, 2019, the ALJ issued a written decision finding that Parker was not disabled from her date of filing to the date of the decision.  (*Id*., PageID.43-51). On February 18, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.32-37).  Parker timely filed for judicial review of the final decision.  (ECF No. 1).

B.    Medical Evidence

Parker was treated on May 2, 2011 at the Orthopedic Associates of Port Huron for persistent left knee pain, left hip pain, and low back pain, while denying any groin or thigh pain at that time.  (ECF No. 7-7, PageID.302-303).  D. David Ernst, D.O., noted that Parker had an ACL reconstruction of the left knee in 2003, and that an x-ray of the left knee revealed no change in the position of the interference screws from that surgery at that time.  (*Id*.).  Parker was diagnosed with chondromalacia of the patella in the left knee, as well as pain.  (*Id*.).  She also underwent an MRI of the lumbar spine on that date, revealing a Tarlov cyst at the S2 vertebrae.  (*Id*., PageID.305).  She was diagnosed with low back pain, sacroiliitis, and lumbar spine osteoarthritis as well.  (*Id*.).  The lumbar spine MRI was reviewed by Matthew J. Sciotti, M.D., who noted that the cause of her current symptoms was unclear and that there was no recommendation for additional treatment of them at that time.  (*Id*.).

3

Parker had an arthroscopy of the left knee later that month, and returned to the office on June 2, 2011, for a recheck post-operation. (*Id.*, PageID.300-301). She appeared healthy, well nourished, and in no acute distress. (*Id.*). Evaluation of the left knee revealed that it was well healed with no signs of infection or phlebitis, and that she could bear full weight and had full knee extension. (*Id.*). Her sutures were removed, and she was recommended to continue physical therapy and pain medication. (*Id.*). She returned to the office on July 21, 2011, for a checkup of the left knee and back, noting no new complaints. (*Id.*, PageID.293-294). She noted that another doctor opined that she did not need surgery for her Tarlov cyst, and that her knee was feeling better at that time. (*Id.*). She again appeared healthy, well nourished, and in no acute distress. (*Id.*). At that visit, straight leg raises reproduced low back pain, and a review of her latest lumbar spine MRI showed bulging discs at L1-2 and L2-3, as well as the aforementioned Tarlov cyst. (*Id.*). Dr. Ernst referred her to Dr. Sciotti for evaluation and consideration of epidural steroid injections. (*Id.*). The next day, July 22, 2011, Dr. Sciotti examined Parker and reviewed the lumbar spine MRI, prescribing her Mobic for pain and inflammation and referring her for a left sacroiliac joint injection. (*Id.*, PageID.307-308).

4

Parker returned to Dr. Sciotti in May 2012 for a recheck, noting that the Tarlov cyst was very painful, bending was difficult, and doing a lot of walking while visiting Chicago increased her bilateral lower extremity pain. (*Id*., PageID.304). She had received one joint injection in August 2011, which was helpful, but the injection itself was painful, and she had not had one since. (*Id*.).

On June 21, 2013, Parker met with Frank Feigenbaum, M.D., for a consultation regarding her lower back. (*Id*., PageID.308-309). She complained of severe pain radiating to the left pelvic region, left buttock, posterior thigh, and down to the bottom of her left foot. (*Id*.). She also complained of numbness, perineal pain, bladder dysfunction, and worsened sacral pain from sitting. (*Id*.). She reported that injections, physical therapy, medications, and other attempted treatments had not helped. (*Id*.). Upon examination, Dr. Feigenbaum found decreased strength in Parker's left plantar flexion and in left toe walking; decreased sensation over the left posterior thigh and calf; and symmetrically decreased deep tendon reflexes in the knees and absent reflexes in the ankles. (*Id*.). An MRI of the lumbosacral region revealed multiple large intrasacral meningeal cysts, causing "blatant impingement of adjacent sacral nerve roots." (*Id*.). The cysts were also causing sacral bone erosion. (*Id*.). Dr. Feigenbaum opined that her symptoms were consistent with a sacral radiculopathy pattern due

5

to sacral nerve root compression within the sacrospinal canal, and that there was no other obvious cause of her symptoms. (*Id*.). Dr. Feigenbaum discussed the options with Parker, and Parker decided to go forward with surgical removal of the cysts. (*Id*.).

Parker's surgery was performed by Dr. Feigenbaum on September 18, 2013, which involved the treatment, draining, and wrapping of five large Tarlov cysts that were causing sacral nerve root compression. (*Id*., PageID.310-313). A week later, Parker was seen for a follow-up and was doing well, walking daily, and healing. (*Id*., PageID.314). Her next visit was a three-month checkup, where she was doing well despite some left leg pain. (*Id*., PageID.317). On November 6, 2014, Parker returned to Dr. Feigenbaum's office to review her post-operative MRI results. (*Id*., PageID.315). She was again doing well, reporting that her sacral pain had improved and that she could sit for about thirty minutes with reasonable comfort. (*Id*.). She had continued left leg pain and numbness, but her perineal pain and numbness had improved, and she could walk about a quarter of a mile before her pain prevented further walking. (*Id*.). She took half of a pain medication dosage at night to help her sleep, and was happy that she underwent the surgery. (*Id*.). There was no recurrence of the treated cysts. (*Id*.).

The medical evidence also reflects that Parker was treated by Emad Daher, M.D., from September 2012 to August 2018. *See generally* ECF No. 7-7, PageID.318- 511; ECF No. 7-8, PageID.528-608, 615-640.  On September 24, 2012, she presented to Dr. Daher with complaints of pain, and upon physical examination he found that she had tenderness of the lumbar spine and a mildly reduced range of motion.  (ECF No. 7-7, PageID.464).  Parker received a pain injection from Dr. Daher on December 20, 2012, but presented on February 28, 2013 again having tenderness of the lumbar spine as well as moderate pain with motion.  (*Id*., PageID.442, 448).

On June 2, 2013, Parker saw Dr. Daher complaining suffered lumbar spine tenderness and a mildly reduced range of motion, and the record reflects that she had been prescribed Vicodin in March of that year.  (*Id*., PageID.442).  She next saw Dr. Daher on December 15, 2014, with an upper respiratory infection, but had no complaints regarding back or joint pain.  (*Id*., PageID.413-418).  Physical examination revealed normal musculoskeletal, neurological, and extremity results, specifically showing a visual overview of all four extremities to be normal, with no edema, and normal sensory findings.  (*Id*.).  She then saw Dr. Daher on July 6, 2015, complaining of fatigue, chest pain, numbness, but no joint or back pain.  (*Id*., PageID.379-385).  Results upon physical examination were again normal.  (*Id*.).

7

Later that month, she visited Dr. Daher again and was taken off of Vicodin and prescribed 600mg of ibuprofen for pain, to be taken three times per day as needed. (*Id.*, PageID.371-377).

On January 2, 2016, Parker underwent another MRI of the lumbar spine, which reflected postsurgical changes but no new Tarlov cysts, resolution of the enhancement towards the left S1 and S2 nerve roots, and no evidence of fracture, bony destructive loss, subcutaneous collection, or pelvic mass. (*Id.*, PageID.492). The lower lumbar spine was found to be unremarkable at that time. (*Id.*).

From April 2016 to May 2017, Dr. Daher saw Parker on six occasions, with each visit reflecting no complaints of pain or abnormal physical examination results regarding her back, joints, or extremities. (*Id.*, PageID.318-334, 357-362, 505-511, 531-532).

Parker had a consulting examination performed by Harold Nims, D.O., on May 9, 2017. (ECF No. 7-7, PageID.512). There, Parker complained of intermittent back pain that can be anywhere from a three to a ten out of ten, and that chiropractic treatments have helped her some. (*Id.*). She also noted moderate bilateral knee pain that had not been treated, and that she can still be active, including walking up to one mile, but "pays the price later on with severe back pain." (*Id.*). She could stand for prolonged periods, bend, and climb stairs, but

8

these activities were painful, and she could not squat, but was able to do some sweeping, vacuuming, and driving. (*Id*.).

Parker next saw Dr. Daher on August 3, 2017, complaining of back pain, but had normal physical examination results (ECF No. 7-8, PageID.545-546). On October 31, 2017, she visited Dr. Daher again, and he found tenderness of the lumbar spine and a mildly reduced range of motion. (*Id*., PageID.600-601). From July to August of 2018, Parker visited Dr. Daher on three occasions. (*Id*., PageID.617-635). On July 10, 2018, Parker presented with a cough, earache, and pharyngitis, and the record reflects that she did not have back pain, joint pain, joint swelling, muscle weakness, or neck pain, with her physical examination being entirely normal. (*Id*., PageID.617-623). She was taking Gabapentin as well as ibuprofen at that time. (*Id*.). However, on August 7, 2018, Parker presented with chronic conditions and disability paperwork. (*Id*., PageID.624). She complained of paresthesia, back pain, and muscle weakness of the left leg. (*Id*., PageID.625-626). On physical examination, Dr. Daher assessed that she needed no assistive device for ambulation, but that she had tenderness of the lumbar spine and a moderately reduced range of motion. (*Id*, PageID.627). He also found positive neurological results in that Parker had decreased sensory on deep tendon reflex testing. (*Id*.). She was taken off of Gabapentin at that time due to side effects,

9

remaining solely on ibuprofen for pain relief.  (*Id*.).  Dr. Daher also rendered an

opinion on Parker's residual functional capacity at that time, which will be

discussed below.  (*Id*., PageID.603-608).  She returned to Dr. Daher on August 29,

2018, for a follow up regarding hospitalization for an ovarian cyst.  (*Id*.,

PageID.629).  She complained of no muscle weakness or back pain at that visit,

with entirely normal results upon physical examination as well.  (*Id*., PageID.632-

634).

At the hearing on January 9, 2019, Parker testified that she had constant pain

"24/7," which included back pain and nerve pain across the pelvis and down the

sciatic nerve, and that her left side was "really, really bad."  (ECF No. 7-2,

PageID.69).  She also described having restless legs, neuropathy in both feet, and

pain that is always at least at a three out of ten, and sometimes "[ten] plus."  (*Id*.,

PageID.69-70).  She noted that opioids did not help her nerve pain and that she had

tried Gabapentin but had a lot of side effects.  (*Id*.).  She further testified that she

could stand for 15 minutes at a time, that walking is better than standing, and that

she could sit at times for 35 to 40 and spent most of her day in the recliner.  (*Id*.,

PageID.72, 75).  She routinely lifted no more than ten pounds, and lifted 20 pounds

at the most, stating that heavy lifting may cause new cysts to form.  (*Id*.,

PageID.73).  She also suffered rectal pain and spasms as well as difficulty

emptying her bladder.  (*Id*.).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

11

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Parker was not disabled under the Act. At Step One, the ALJ found that Parker had not engaged in substantial gainful activity from her alleged onset date to June 30, 2017, her date last insured. (ECF No. 7-2, PageID.45). At Step Two, the ALJ found that she had the severe impairments of Tarlov cyst disease, status post surgery; osteoarthritis; and obesity. (*Id.*) At Step Three, the ALJ found that Parker's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment. (*Id.*, PageID.46).

12

The ALJ then assessed Parker's residual functional capacity (RFC),

concluding that she was capable of performing light work with the following

additional limitations:

> [S]he can never climb ladders, ropes, and scaffolds.  She can frequently
> climb ramps and stairs.  She can occasionally stoop, crouch, kneel, and
> crawl.  She can never work at unprotected heights.  She can frequently
> finger.

(*Id.*).

At Step Four, the ALJ found that Parker was able to perform her past

relevant work as a receptionist, based in part on testimony provided by the VE in

response to hypothetical questions.  (*Id.*, PageID.50).  The VE testified that

receptionist is a sedentary, semi-skilled position that an individual with Parker's

RFC could perform.  (*Id.*, PageID.79-80).  The VE further testified that an

individual who was off-task for over 15% of the workday, including time spent

with legs elevated to about the chest level, would be precluded from competitive

employment, as would an individual who was absent more than one day per month.

(*Id.*, PageID.81-84).  But these restrictions were not incorporated into the RFC.  As

a result, the ALJ concluded that Bush was not disabled under the Act.  (*Id.*,

PageID.51).

### IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that

15

error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (internal quotations omitted).

V.    Analysis

Parker argues that the ALJ did not properly apply the treating physician rule to Dr. Daher's opinion, which was substantially more restrictive than the RFC, and that the ALJ's subjective symptom evaluation regarding Parker's statements was flawed.  For these reasons, Parker says that the RFC was not supported by substantial evidence and that remand is warranted.  The Commissioner responds that the ALJ appropriately articulated how he considered Dr. Daher's opinion, and that the ALJ's conclusions were supported by substantial evidence.

A.

Parker argues that the ALJ violated the treating physician rule by declining to give controlling weight to Dr. Daher's opinion and by failing to give good reasons for affording the opinion "little weight."[1]  (ECF No. 7-2, PageID.49).

In evaluating medical opinion evidence, an ALJ will give the medical opinion of a claimant's treating physician controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[1] The ALJ refers to Dr. Daher as "Dr. Daber," which the parties and the Court assume to be a typographical mistake.

16

and is not inconsistent with the other substantial evidence" in the record (the

"treating physician rule").  20 C.F.R. § 404.1527(c)(2); *see Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  While controlling weight may be

given to medical opinion evidence such as "the nature and severity of an

individual's impairment(s)," controlling weight may not be given to

"administrative findings that are dispositive of a case"—for example, what an

individual's residual functional capacity is or whether an individual is disabled.

Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. §

404.1527(d); *see also Warner*, 375 F.3d at 390 ("The determination of disability is

ultimately the prerogative of the Commissioner, not the treating physician."

(alterations adopted) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985))).  Furthermore, controlling weight may not be given to an opinion "unless it

also is 'not inconsistent' with the other substantial evidence in the case record."

Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996).

If the ALJ decides not to give the treating physician's medical opinion

controlling weight, he must determine what weight to give it by looking at "the

length of the treatment relationship and the frequency of examination, the nature

and extent of the treatment relationship, supportability of the opinion, consistency

of the opinion with the record as a whole, and any specialization of the treating

17

physician." *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6).

The ALJ is required to "always give good reasons in [the] notice of determination

or decision for the weight" of the "treating source's medical opinion" (the "good

reasons requirement"). 20 C.F.R. § 404.1527(c)(2); *see also* Soc. Sec. Rul. 96-

8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with

an opinion from a medical source, the adjudicator must explain why the opinion

was not adopted."). These reasons must be specific in order to "make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL

374188, at *5 (July 2, 1996).

The SSA recently revised its rules regarding opinion evidence, eliminating

the treating physician rule and instructing ALJs to evaluate all applicable opinion

evidence under the same criteria. *See Revisions to Rules Regarding the Evaluation*

*of Medical Evidence*, 82 Fed. Reg. 5844. But for claims filed before March 27,

2017, like Parker's, the treating physician rule and good reasons requirement still

apply. 20 C.F.R. § 404.1527.

Dr. Daher completed a medical source statement on August 7, 2018. (ECF

No. 7-8, PageID.604-608). Therein, he noted that Parker had been diagnosed with

chronic Tarlov cysts as of September 18, 2013, and opined that her prognosis was

guarded.  (*Id.*, PageID.604).  He specifically noted that she suffered from low back pain, left leg numbness and weakness, urinary retention, and groin numbness. (*Id.*).  Dr. Daher characterized her pain as low back pain that radiates to the left leg occurring on a daily basis that is moderate to severe in level.  (*Id.*).  Sitting, standing, walking any distance, and lying on her left side aggravated her condition. (*Id.*).  In support of his opinion, he noted the clinical findings and objective signs of left leg weakness, decreased reflexes, and low back tenderness.  (*Id.*).  As for treatment, Dr. Daher stated that Parker managed her pain with ibuprofen as needed, and that she had surgery on September 18, 2013 with no further treatment available at this time.  (*Id.*, PageID.605).

As for Parker's residual functional capacity, Dr. Daher opined that she would be capable of low stress work, could walk one city block without rest or severe pain, could sit for 30 minutes at a time, could stand for 15 minutes at a time, and in a total day could sit or stand/walk for less than two hours, each.  (*Id.*, PageID.606).  Further, Parker would need to walk every 15 minutes for ten minutes at a time, would require a job that allowed for shifting of positions at will, and would need an unscheduled break every hour for 15 minutes at a time.  (*Id.*, PageID.606-607).  She would need her leg elevated to 90 degrees for 50% of the day, could rarely lift 20 pounds, and could never twist, stoop, crouch, climb

ladders, or climb stairs.  (*Id*., PageID.607-608).  Dr. Daher also estimated that Parker would be absent from work due to her impairments more than four days per month.  (*Id*., PageID.608).

In assessing Dr. Daher's opinion, the ALJ found that it was inconsistent with the medical evidence, including Dr. Daher's records, that reflected "numerous physical examinations that found her without back pain, joint pain, joint swelling, muscle weakness, myalgias, and with a normal overview of all four extremities." (ECF No. 7-2, PageID.49-50).  The ALJ also noted the conservative treatment of managing her pain with ibuprofen as needed, the fact that Parker's cysts were removed and had not returned, and the lack of any evidentiary support for her need to elevate her legs.  (*Id*.).  Further, the ALJ found that medical records indicating Parker's ability to walk from one quarter mile to one mile were inconsistent with Dr. Daher's opinion that she could only walk one city block.  (*Id*.).

Parker suggests the ALJ may not have realized that the treating physician rule still applied to this matter when assessing Dr. Daher's medical source opinion. But in reviewing the evidence cited by the ALJ in support of his assessment, the Court finds that he adhered to the treating physician rule and good reasons requirement.  As noted above, Parker's cysts were surgically removed by Dr. Feigenbaum on September 18, 2013, and a week later Parker reported that she was

20

doing well and walking daily.  (ECF No. 7-7, PageID.313-317).  At her three-month and yearly follow-ups, Parker reported that she could walk a quarter of a mile before pain prevented further walking, that she took half of a dose of pain medication at night to help her sleep, and that she was happy with the surgery. (*Id.*).  Dr. Feigenbaum found that the cysts had not recurred as late as November 2014.  (*Id.*).

Furthermore, between the date of Parker's surgery and her date last insured, most of Dr. Daher's own records reflect normal physical examinations of Parker's musculoskeletal and neurological systems, and she often did not complain of back or joint pain.  (*Id.*, PageID.318-334, 357-362, 371-377, 379-385, 413-418, 442, 505-511, 531-532).  In July of 2015, Parker was taken off of Vicodin and prescribed ibuprofen as needed, and she was no longer receiving injections for pain.  (*Id.*, PageID.371-377).  In January of 2016, she had an MRI that revealed an unremarkable lower lumbar spine.  (*Id.*, PageID.492).

On May 9, 2017, Dr. Nims examined Parker, who reported that she could walk up to one mile, continues to drive, and does some sweeping and vacuuming of the house, though not without difficulty.  (*Id.*, PageID.512).  Upon examination, Dr. Nims found that Parker had a normal gait that was not unsteady, lurching, or unpredictable; she did not require an assistive device for ambulation; and she

21

appeared stable in standing, sitting, and supine positions; but she did have mild

reduction in knee motion bilaterally and a great deal of pain and discomfort with

squatting or bending.  (*Id.*, PageID.515).  He determined that she was at least

mildly impaired in bending, stooping, lifting, walking, crawling, squatting,

carrying, and traveling, as well as pushing and pulling heavy objects.  (*Id.*,

PageID.516).  The ALJ gave this opinion great weight, finding it to be internally

consistent as well as consistent with and supported by the other medical evidence.

(ECF No. 7-2, PageID.49).

Parker does not challenge the weight allotted to Dr. Nims's opinion, nor

does she offer any reconciliation of the evidence above with Dr. Daher's opinion,

which is quite restrictive.  Instead, she concentrates solely on the records from July

and August of 2018 that the ALJ cited while directly considering Dr. Daher's

opinion.  However, the Court must "read the ALJ's decision as a whole," and the

records from September 2013 to May 2017 informed the ALJ's analysis as well.

*Koch v. Comm'r of Soc. Sec. Admin.*, No. 5:19-CV-13631, 2021 WL 1565422, at

*5 (E.D. Mich. Feb. 11, 2021), *report and recommendation adopted sub*

*nom. Koch v. Comm'r of Soc. Sec.*, 2021 WL 1186502 (E.D. Mich. Mar. 30, 2021)

(citing *Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4

(E.D. Mich. Sept. 11, 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir.

2004) ("Because it is proper to read the ALJ's decision as a whole ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.)).  Further, the ALJ can satisfy his duty to consider the medical opinions by "*indirectly* attacking the supportability of the treating [source's] opinion or its consistency with other evidence in the record."  *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010)) (emphasis in original).  This was done by affording great weight to Dr. Nims's contradictory and less restrictive examining opinion, which Parker does not challenge.

Turning to the records that Parker addresses, her visits to Dr. Daher on July 10 and August 29, 2018 reflect her denial of joint pain, joint swelling, muscle weakness, or neck pain, and entirely normal objective examination results.  (ECF No. 7-8, PageID.617-623, 629-634).  Only her August 7, 2018 visit, where she provided Dr. Daher with disability paperwork, reflected complaints of paresthesia, back pain, and muscle weakness of the leg.  (*Id*., PageID.624-627).  On physical examination, Dr. Daher found tenderness of the lumbar spine and a moderately reduced range of motion, as well as decreased sensory findings on deep tendon reflex testing.  (*Id*, PageID.627).  Nevertheless, she discontinued Gabapentin, remained solely on ibuprofen for pain, and had no other prescribed treatment at

23

that time, including no reference to leg elevation.  (*Id.*).  Parker also objects to the

ALJ's citation to a record from her emergency room visit for abdominal pain on

August 22, 2018, but the record cited to in the ALJ's decision reflects a review of

systems where Parker denied musculoskeletal symptoms, myalgias, numbness, or

muscle weakness.  (*Id.*, PageID.656).  Parker notes that other records from that ER

visit reference her chronic nerve and back pain, but these are references to her past

medical history.  *See* ECF No. 7-8, PageID.643-674.

Parker points to no other evidence that would support Dr. Daher's treating

source opinion, and the Court is under no obligation to "scour the record to support

this claim."  *Deguise v. Comm'r of Social Security,* No. 12–10590, 2013 WL

1189967, at *7 (E.D. Mich. Feb. 19, 2013), *report and recommendation*

*adopted*, 2013 WL 1187291 (Mar. 22, 2013).  Nevertheless, in considering the

record above, the Court finds the ALJ's treatment of Dr. Daher's opinion to be

supported by substantial evidence.

Under 20 C.F.R. § 404.1527(c)(2), Dr. Daher's opinion is only due

controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence" in the record.  The ALJ properly denied controlling weight to the

opinion, noting normal MRI results, numerous treatment records from Dr. Daher

24

and others with normal examination results, conservative treatment, and a lack of

objective evidence supporting Parker's need to elevate her leg to the extent

suggested by the opinion.  These factors not only provide cause to deny Dr.

Daher's opinion controlling weight, but they also satisfy the good reasons

requirement for affording little weight to the opinion under 20 C.F.R. §

404.1527(c)(2)(i), (c)(2)(ii), and (c)(3)-(c)(6).  There is thus no cause for remand

based on the treatment of Dr. Daher's opinion.

## B.

Parker next argues that the ALJ improperly assessed her subjective

complaints and credibility.  The Social Security Regulations establish a two-step

process for evaluating a claimant's subjective symptoms, including pain.  20 C.F.R.

§ 404.1529(a); SSR 16-3p.  According to Social Security Ruling ("SSR") 16-3p, an

ALJ must analyze the consistency of the claimant's statements with the other

record evidence, considering his testimony about pain or other symptoms with the

rest of the relevant evidence in the record and factors outlined in SSR 16-3p, 2016

WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it –

formerly termed a "credibility" determination – can be disturbed only for a

"compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F.App'x 977, 981 (6th Cir.

2011); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F.App'x 113, 119 n.1 (6th Cir.

25

2016) (explaining that SSR 16-3p merely eliminated "the use of the word 'credibility' ... to 'clarify the subjective symptoms evaluation is not an examination of an individual's character.' ").  The ALJ must first confirm that objective medical evidence of the underlying condition exists, and then determine whether that condition could reasonably be expected to produce the alleged pain, considering other evidence, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side-effect of any medication; (5) treatment, other than medication received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

In evaluating Parker's subjective symptoms, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (ECF No. 7-2, PageID.47).  In so finding, the ALJ noted that the medical evidence suggested improvement of Parker's symptoms following her surgeries, specifically removal of her Tarlov cysts.  (*Id*., PageID.48).  One year following that surgery by Dr. Feigenbaum, Parker reported being able to walk about a quarter of a mile, taking only half of a

pain medication at night to help her sleep, and being happy with the surgery.  (ECF

No. 7-7, PageID.315).  She was also "educated on [the] length of time it takes

nerves to heal," suggesting that she was still healing from the cyst removal.  (*Id*.).

Parker notes that this record still reflects her only being able to sit for 30 minutes at

a time in reasonable comfort.  (*Id*.).  But this ignores later evidence cited by the

ALJ from May 9, 2017, wherein Parker "denie[d] any problem with sitting" to Dr.

Nims, and was found to be "stable" in the sitting position.  (*Id*., PageID.512, 514).

Dr. Nims also found no tenderness of the spine, normal straight leg raise tests in

the sitting position, and that Parker was able to stand on one leg at a time without

difficulty.  (*Id*., PageID.515).

The ALJ further noted that her normal physical examination results and

conservative treatment while treating with Dr. Daher, as cited herein, belie her

subjective complaints of pain.  (ECF No. 7-2, PageID.48-49).  Parker responds that

under 20 C.F.R. § 404.1529(c)(2), the ALJ "will not reject your statements about

the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely because the available objective

medical evidence does not substantiate your statements."  But this ignores the prior

text of that section:

> Objective medical evidence is evidence obtained from the application
> of medically acceptable clinical and laboratory diagnostic techniques,

> such as evidence of reduced joint motion, muscle spasm, sensory deficit
> or motor disruption.  Objective medical evidence of this type is a useful
> indicator to assist us in making reasonable conclusions about the
> *intensity and persistence of your symptoms and the effect those*
> *symptoms, such as pain, may have on your ability to work*. We must
> always attempt to obtain objective medical evidence and, *when it is*
> *obtained, we will consider it in reaching a conclusion as to whether you*
> *are disabled*.

(Emphasis added).  It further ignores the specific factors, obtained largely from

objective evidence, that the ALJ is directed to consider under 20 C.F.R. §

404.1529(c)(3)(i)-(vii), which are listed above.  "In evaluating a claimant's

reported symptoms, ALJ's are *required* to consider the symptoms' consistency

with the broader record, including objective medical evidence and other claimant

testimony."  *Grandowicz-Racz v. Comm'r of Soc. Sec.*, No. 18-11993, 2019 WL

4071921, at *3 (E.D. Mich. Aug. 29, 2019) (emphasis added) (citing 20 C.F.R. §

404.1529(c)(3)).

The ALJ did not outright reject Parker's statements; this is clear from his

assessment of the state agency consulting opinion of Valerie Andrews, M.D.,

where the ALJ stated that Dr. Andrews "failed to consider adequately [Parker's]

subjective complaints or the combined effects of all impairments."  (ECF No. 7-2,

PageID.49).  But he noted that the subjective complaints were not entirely

consistent with the record evidence, and pointed specifically to the inconsistencies.

Further, he considered Parker's attested activities of daily living, which include

28

chores, housework, shopping, driving, playing video games, and computer photo

editing.  (*Id.*, citing ECF No. 7-6, PageID.237-244).  Parker argues that these

activities are not inconsistent with her claim of disability, and that "a claimant need

not be an invalid to be found disabled" under the Act, citing *Balsamo v. Chater*,

142 F.3d 75, 81 (2d Cir. 1998).  But as the Commissioner states, in the Sixth

Circuit, "[a]s a matter of law, an ALJ may consider household and social activities

in evaluating complaints of disabling pain."  *Blacha v. Sec'y of Health & Human*

*Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Morr v. Comm'r of Soc. Sec.*,

616 F.App'x 210, 212 (6th Cir. 2015) (finding ALJ's adverse credibility

determination was properly based in part on contradictions between the claimant's

alleged medical complaints and her "own activities including providing for her

own personal grooming, cleaning, cooking daily for up to an hour, watching

television, washing dishes three time[s] daily, doing laundry, caring for cats, and

driving"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.

2001) (finding that the ALJ properly "considered [the claimant's] testimony

concerning fatigue and shortness of breath in light of other evidence that [she]

regularly walks around her yard for exercise, rides an exercise bicycle, goes to

church, goes on vacation, cooks, vacuums, and makes beds"); *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (finding that the ALJ acted properly

when he took into account that claimant could "run all of his errands, walk two

miles, prepare all of his meals, and drive three times a week").  Accordingly, the

ALJ's subjective symptom evaluation is supported by substantial evidence, and

Parker has failed to demonstrate cause for remand on this issue.

C.

Parker's final argument is that the ALJ's assessed RFC is not based on

substantial evidence.   A person's residual functional capacity is the most he is able

to do despite any physical, mental, or environmental limitations resulting from his

impairments. 20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing

residual functional capacity and takes into account all of the relevant medical and

other evidence in doing so.  *Id.* §§ 404.1545(a), 404.1546(c).  This includes

statements about the claimant's abilities provided by medical sources, whether or

not they are based on formal medical examinations, and non-medical statements

from the claimant or others, including those regarding daily activities.  *Id.* §

404.1545(a)(3); Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  It is

the claimant's burden at this stage to establish his or her RFC.  *Her v. Comm'r of*

*Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

Parker accuses the ALJ of formulating a "very bare bones" RFC and

rejecting Dr. Daher's findings without explanation.  But the Commissioner

30

correctly responds that this is simply a rehashing of Parker's treating physician rule

argument, and that "[n]o bright-line rule exists in our circuit directing that medical

opinions must be the building blocks of the [RFC] finding"; the ALJ need only

"make a connection between the evidence relied on and the conclusion reached."

*Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *see also*

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x. 395, 401 (6th Cir.

2018) ("We have previously rejected the argument that a residual functional

capacity determination cannot be supported by substantial evidence unless a

physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v.

Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the

argument that "the ALJ's RFC lacks substantial evidence because no physician

opined that [the claimant] was capable of light work")); *Rudd v. Comm'r of Soc.

Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because

"the ALJ is charged with the responsibility of determining the RFC based on her

evaluation of the medical and non-medical evidence")).  An ALJ is "entitled to

create an RFC based on his evaluation of the available medical evidence."

*Sparrow v. Comm'r of Soc. Sec.*, No. 15-CV-11397, 2016 WL 1658305, at *7

(E.D. Mich. Mar. 30, 2016), *report and recommendation adopted*,  2016 WL

1640416 (E.D. Mich. Apr. 26, 2016).  Further, the ALJ afforded great weight to the

examining opinion of Dr. Nims, whose limitations on walking, crawling, stooping, carrying, traveling, and pushing and pulling heavy objects are incorporated into the RFC for sedentary work with additional restrictions.  (ECF No. 7-2, PageID.47; ECF No. 7-7, PageID.516).

Parker also faults the ALJ for failing to incorporate every hypothetical limitation posed to the VE into the RFC.  But "the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations." *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (citation omitted).  "That does not mean that the vocational expert's answer about the hypothetical individual binds the ALJ." *Id*. (emphasis in original).  *See also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  Parker has shown no incongruity between the questions posed to the VE, the VE's testimony, and the assessed RFC.

Lastly, the Commissioner appears to interpret Parker's discussion of *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002) in this section as an

32

accusation of "cherry-picking," or citing only to favorable medical records.  As put

in *Howard*:

> The ALJ's summary is taken primarily from section E of the intake
> report which is entitled "Mental Status."  The last phrase in the RFC,
> which says that Howard has a "need to perform work of a simple and
> relatively nonstressful nature," appears to be the conclusion the ALJ
> reaches based upon the intake report.  A review of the entire intake
> report, however, reveals that *the ALJ included only those portions of*
> *the intake report which cast Howard in a capable light and excluded*
> *those portions which showed Howard in a less-than-capable light*.

276 F.3d at 240 (emphasis added).

Parker cites to this language from *Howard*, but does not connect it to the

ALJ's analysis in this case.  Moreover, as the Commissioner notes, an allegation of

" 'cherry picking' the record . . . is seldom successful because crediting it would

require a court to reweigh record evidence."  (ECF No. 14, PageID.756 (quoting

*DeLong v. Comm'r of Soc. Sec. Admin*., 748 F.3d 723, 726 (6th Cir. 2014)).  In any

event, the ALJ cited to copious medical records in his analysis.  Parker has not

cited, and the Court has not found, instances of the ALJ excluding portions of any

evidence that shows Parker in a less-than-capable light.  As such, any argument as

to "cherry-picking" is unfounded. The ALJ acknowledged physical examinations

that found Parker with "pain to palpitation over the lumbar paraspinal muscles

bilaterally; with tenderness; with pain over her sacroiliac joint; with decreased

strength in her left plantar flexion and in left toe; and with mildly reduced range of

motion." (ECF No. 7-2, PageID.48).  Based on these findings, the ALJ assessed a

sedentary RFC with additional postural and environmental limitations to

accommodate Parker's musculoskeletal conditions.  (*Id*.).  The burden is on Parker

to show that a more restrictive RFC is warranted, and she has not done so.  *Her v.*

*Comm'r of Soc. Sec*., 203 F.3d at 391.

VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Parker's motion be DENIED, and that

under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be

AFFIRMED.

Dated: July 6, 2021                                    s/Kimberly G. Altman
Detroit, Michigan                                     KIMBERLY G. ALTMAN
                                                      United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 6, 2021.


s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager

36